Filed 12/13/24  P. v. Dixon CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANTHONY D. DIXON, JR. Defendant and Appellant. | B328947 (Los Angeles County Super. Ct. No. TA136291-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Anthony Dixon, Jr. appeals from the superior court's order denying his petition for resentencing under Penal Code section 1170.95[1] (now section 1172.6). In 2016 a jury convicted him on one count of second degree murder and three counts of attempted willful, deliberate, and premeditated murder. The trial court sentenced him to an aggregate prison term of 140 years to life. Dixon appealed, and we reversed the judgment and directed the trial court to conduct a new trial. On remand, pursuant to a negotiated disposition, Dixon pleaded no contest to voluntary manslaughter, and the trial court sentenced him to a prison term of 22 years.

In 2022 Dixon filed a petition under section 1172.6, which the superior court summarily denied. Dixon argues the court erred in finding he failed to make a prima facie case for relief. Because Dixon is ineligible for relief as a matter of law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *A Jury Convicts Dixon on One Count of Second Degree Murder and Three Counts of Attempted Murder, Dixon Appeals, and We Reverse*

One evening in May 2014 Dixon, who called himself a "general" of a criminal street gang, drove a fellow gang member and an associate to the home of Terrence Sims, a rival gang member. Dixon's two confederates got out of the car and fired

---

[1]     Statutory references are to the Penal Code.

approximately 20 shots at the house. One of the bullets struck Sims's sister, instantly killing her, and another bullet struck a man who was standing on the front porch of the house, injuring him. At the time of the shooting, one of Sims's fellow gang members was sitting in a car parked in the carport by the house; none of the bullets hit him.

Sims had just left his house on his bicycle. From down the street, he heard the gunshots fired at his house, and he hid in a nearby mortuary. When Dixon drove past him, Sims felt he was "'being shot at,'" but none of the bullets hit him. Dixon drove away after the shooting. (*People v. Dixon et al.* (April 10, 2019, B277759) [nonpub. opn.] (*Dixon I*).)

A jury convicted Dixon on one count of second degree murder (§ 187, subd. (a)) and three counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664, subd. (a)). The jury also found true the allegation he committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b). The trial court sentenced Dixon to an aggregate prison term of 140 years to life. Dixon appealed, contending the trial court erred in denying two motions he made under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258. We agreed with Dixon that the court erred in denying one of the motions, reversed the judgment, and remanded the case for a new trial. (*People v. Dixon, supra*, B277759.)

B.    *The Trial Court Accepts Dixon's No Contest Plea to Voluntary Manslaughter and Sentences Him*

In May 2021, as part of a negotiated disposition, Dixon pleaded no contest to an amended charge of voluntary manslaughter and admitted he had a prior conviction for a felony that was a serious felony, within the meaning of section 667, subdivision (a), and a serious or violent felony, within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).  The trial court sentenced Dixon to a prison term of 22 years and granted the People's motion to dismiss the remaining counts.

C.    *Dixon Petitions for Resentencing Under Section 1172.6, and the Superior Court Denies His Petition*

In May 2022 Dixon filed a petition for resentencing under section 1172.6.  Dixon alleged he met the eligibility requirements of section 1172.6, subdivision (a), and requested counsel.  After the court appointed counsel to represent Dixon, the People filed a response, arguing Dixon was ineligible for relief because the trial court did not instruct the jury on felony murder, the natural and probable consequences doctrine, or any other theory of culpability that imputed malice to Dixon.  Dixon did not file a reply.

The superior court held a hearing in January 2023 to determine whether Dixon established a prima facie case for relief. The court confirmed with the prosecutor that the trial court did not instruct the jury on felony murder or the natural and probable consequences doctrine.  Counsel for Dixon did not make any argument and submitted on the petition.  The court ruled that, because the trial court had not instructed the jury on felony

4

murder or the natural and probable consequences doctrine, Dixon was not eligible for resentencing.  Dixon timely appealed.

## DISCUSSION

A.    *Section 1172.6 and the Standard of Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective 2019, substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Arellano* (2024) 16 Cal.5th 457, 468 (*Arellano*); *People v. Curiel* (2023) 15 Cal.5th 433, 440 (*Curiel*); *People v. Reyes* (2023) 14 Cal.5th 981, 986 (*Reyes*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *Arellano*, at p. 467; *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  (*Arellano*, at p. 468; *Curiel*, at p. 449; *Gentile*, at pp. 842-843.)

Section 1172.6, as originally enacted, authorized an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the legislative changes to the definitions of the crime.  (See *Arellano*, *supra*, 16 Cal.5th at p. 468; *Curiel*, *supra*,

15 Cal.5th at pp. 449-450.)  Effective 2022, the Legislature amended section 1172.6 to apply to individuals convicted of attempted murder under the natural and probable consequences doctrine or manslaughter when the prosecution was allowed to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine.  (§ 1172.6, subd. (a); see Stats. 2021, ch. 551; *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

The process under section 1172.6 "'begins with the filing of a petition containing a declaration that all requirements for eligibility are met.'"  (*Arellano, supra*, 16 Cal.5th at p. 468; see § 1172.6, subd. (a).)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner, if requested.  (*Lewis, supra*, 11 Cal.5th at pp. 962-963; see § 1172.6, subd. (b)(1)(A), (b)(3).)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c); see *Curiel, supra*, 15 Cal.5th at p. 450.)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Lewis, supra*, 11 Cal.5th at p. 971; see *Curiel, supra*, 15 Cal.5th at pp. 463-464.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit

from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972; see *People v. Williams* (2024) 103 Cal.App.5th 375, 386, review granted Sept. 11, 2024, S286314.) If the record of conviction ""'contain[s] facts refuting the allegations made in the petition," "the court is justified in making a credibility determination adverse to the petitioner.'"" (*Lewis*, at p. 971; see *Williams*, at p. 386.) Thus, if ""'the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.'"" (*Arellano*, *supra*, 16 Cal.5th at p. 469; see § 1172.6, subd. (c); *Curiel*, at p. 460.)

If on the other hand, a petitioner establishes a prima facie case for relief, the superior court must issue an order to show cause, and the matter proceeds to an evidentiary hearing, "at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437." (*Strong*, *supra*, 13 Cal.5th at p. 709; see § 1172.6, subds. (c), (d)(3); *Arellano*, *supra*, 16 Cal.5th at p. 469; *People v. Harris* (2024) 105 Cal.App.5th 623, 631-632.) We review de novo an order denying a petition under section 1172.6 without issuing an order to show cause. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 337; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200; *People v. Pacheco* (2022) 76 Cal.App.5th 118, 123.)

7

B.      *The Superior Court Did Not Err in Summarily*
        *Denying Dixon's Petition*

Dixon argues nothing in the record of conviction refutes his factual assertions regarding each of the requirements listed in section 1172.6, subdivision (a).  In particular, Dixon contends that, although he pleaded no contest after the Legislature amended the murder statutes in 2019, his plea occurred before Senate Bill No. 775 "expanded" Senate Bill No. 1437 "to prohibit attempted murder convictions based on imputed malice."  In Dixon's view, at the time of his plea, the People "could have still proceeded on the now-invalid theory as to the attempted murder charges."  The law, however, does not support Dixon's hyper-technical construction of section 1172.6.

As discussed, a petitioner must satisfy three conditions to be eligible for resentencing under section 1172.6:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.  (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(1)-(3); see *Reyes, supra,* 97 Cal.App.5th at p. 297.)  For a defendant who pleaded guilty to manslaughter, "the most reasonable reading of the third

8

criterion for establishing resentencing eligibility is that at the time of conviction—i.e., the time the plea was entered—the only way to a murder conviction was through an imputed malice theory.  As a matter of law, this cannot be true for a person . . . who pled guilty to voluntary manslaughter at a time when imputed malice theories had already been statutorily eliminated." (*People v. Lezama* (2024) 101 Cal.App.5th 583, 590.) Because Dixon pleaded no contest to voluntary manslaughter in 2021, after the Legislature had enacted Senate Bill No. 1437, Dixon cannot show he could not be convicted of murder "because of" the legislative changes to sections 188 and 189 (§ 1172.6, subd. (a)(3)).  (See *Lezama*, at p. 590 [where the defendant pleaded guilty to voluntary manslaughter after the Legislature enacted Senate Bill No. 1437, the superior court did not err in summarily denying the petition under section 1172.6]; *Reyes*, at p. 298 ["When appellant entered his change of plea [in 2021], the now invalid theories of murder liability had already been eliminated.  Consequently, appellant has already received the benefits of Senate Bill No. 1437."].)

In an effort to distinguish *Lezama, supra*, 101 Cal.App.5th 583, Dixon argues the defendant in that case "was not charged with attempted murder, and therefore, did not accept a plea to voluntary manslaughter in lieu of going to trial at which he could have been convicted of attempted murder under an invalid theory of liability."  Citing section 1172.6, subdivision (a)(2), Dixon argues the prosecution in his case "would have been permitted to proceed under an invalid theory of liability" for attempted murder.  Therefore, according to Dixon, he met the requirement of section 1172.6, subdivision (a)(3), because he could not presently be convicted of attempted murder.  *People v. Gallegos*

(2024) 105 Cal.App.5th 434 (*Gallegos*), a case almost identical to this one, rejected the same argument.

In *Gallegos*, *supra*, 105 Cal.App.5th 434 the defendant, like Dixon, faced murder and attempted murder charges and pleaded no contest to voluntary manslaughter after the Legislature enacted Senate Bill No. 1437, but before the Legislature enacted Senate Bill No. 775. (*Gallegos*, at p. 439.) The defendant filed a petition for resentencing and argued "he could have faced attempted murder liability under a now-invalid theory had he proceeded to trial in lieu of entering a plea to voluntary manslaughter in 2019." (*Id*. at p. 444.) Therefore, according to the defendant, "he met his prima facie burden by alleging he could not be convicted of *attempted murder* due to 'changes to [s]ection 188 or 189 made effective January 1, 2019.'" (*Gallegos*, at p. 444.) The court in *Gallegos* acknowledged the defendant's plea "arguably satisfies subdivision (a)(2) of section 1172.6: [H]e entered a plea to voluntary manslaughter in lieu of a trial at which he could have been convicted of attempted murder . . . under a now-invalid theory (as well as murder . . . under a valid theory)." (*Gallegos*, at p. 444.) But, the court explained, when the provision "is read in the context of the statute as a whole," the defendant's argument failed. (*Ibid*.) The court held the statutory language of section 1172.6, subdivisions (a) and (d), which focus on "the individual conviction at issue," reflect "a statutory purpose to provide relief for specific convictions obtained under a now-invalid theory of liability," instead of relief "based on dismissed charges separate and apart from the conviction at issue." (*Gallegos*, at p. 444.)

We agree with *Gallegos*. Section 1172.6, subdivision (a)(2), states as one of the three criteria for eligibility that the defendant

"was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder." The Legislature listed the possible crimes the People could have pursued (murder or attempted murder) to track the specific conviction on which the defendant is seeking resentencing (murder, attempted murder, or manslaughter). (See *People v. Kelly* (2024) 105 Cal.App.5th 162, 172 ["We do not . . . consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes."].)

As the court in *Gallegos* observed, the legislative history of Senate Bill No. 1437 makes clear the Legislature "intended section 1172.6 to apply to those petitioners who entered a plea to manslaughter only if, at the time the plea was entered, the only way *to a charged murder conviction* was through an imputed malice theory eliminated by Senate Bill No. 1437." (*Gallegos*, *supra*, 105 Cal.App.5th at p. 445; see Stats. 2021, ch. 551, § 1, subd. (a) [Senate Bill No. 775 clarifies that persons "who were convicted of . . . manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories"]; Sen. Com. on Appropriations, Rep. on Sen. Bill No. 775 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 3 ["[t]his bill would allow a person . . . who was convicted of manslaughter when the prosecution was allowed to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine to apply to have their sentence vacated and be resentenced"]; Sen. Com. on Public Safety, Rep. on Sen. Bill No 775 (2021-2022 Reg. Sess.) as amended Feb. 19,

2021, p. 7 ["If this bill passes, people who are serving a sentence of manslaughter . . . that were prosecuted under a felony murder theory or a natural and probable consequences theory will be able to have their sentences recalled under the same standards as people who have been convicted of first and second-degree murder."].)  The legislative history indicates the Legislature contemplated that a defendant convicted of manslaughter would be eligible for resentencing where the prosecution obtained that conviction by way of an imputed malice theory of murder.  The legislative history does not support Dixon's argument he is eligible for relief because the prosecution could have proceeded on an imputed malice theory on his attempted murder counts, which were unrelated to his conviction for voluntary manslaughter, a crime that, in the People's words, involved a "completed homicide."[2]  (See *Gallegos*, at p. 445; see also *People v. Elmore* (2014) 59 Cal.4th 121, 133 ["Manslaughter, a lesser included offense of murder, is an unlawful killing without malice."]; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 775 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, pp. 5-6 [recognizing voluntary manslaughter "[is] often the subject of a plea bargain in murder cases in exchange for dismissal of a murder charge"].)

---

[2]     In *Gallegos*, *supra*, 105 Cal.App.5th at p. 439 the People amended the complaint to reduce the murder charge to voluntary manslaughter, whereas here the trial court granted the People's motion to add the voluntary manslaughter charge as a separate count.  This distinction does not change the analysis because, had the case proceeded to trial, the People would not have been able to obtain a conviction for voluntary manslaughter by prosecuting Dixon for attempted murder.  Voluntary manslaughter is a lesser included offense of murder, but not of attempted murder.

12

The gist of Dixon's argument is that, to state a prima facie case under section 1172.6, subdivision (a), the defendant can assert that he could not presently be convicted of murder or that he could not presently be convicted of attempted murder, regardless of his actual conviction.  This reasoning would produce an absurd result when extended to other provisions of section 1172.6.  (See *People v. Guillory* (2022) 82 Cal.App.5th 326, 333 ["While courts generally defer to statutory language, we will not do so if it would subvert the legislative intent, produce absurd consequences, or render other parts of the statute surplusage."].)  For example, at the evidentiary hearing the prosecution must prove beyond a reasonable doubt the defendant "is guilty of murder *or* attempted murder" under current law.  (§ 1172.6, subd. (d)(3), italics added.)  If the People were allowed to link Dixon's manslaughter conviction to his attempted murder charges (as Dixon attempts to do here), they could prove Dixon is guilty of attempted murder of a completely different set of victims (instead of proving he is guilty of the murder of Sims's sister), an outcome inconsistent with the statute's purpose of providing relief for the actual conviction the prosecution secured through now-invalidated theories.  (See *Gallegos*, *supra*, 105 Cal.App.5th at p. 444.)  Because the record of conviction and the proper interpretation of section 1172.6 refute Dixon's assertion under section 1172.6, subdivision (a)(3), Dixon is ineligible for relief as a matter of law, and the superior court did not err in denying his petition.  (See *Gallegos*, at p. 445.)

## DISPOSITION

The order denying Dixon's petition under section 1172.6 is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.